# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARGIE WESEL**, *on behalf of herself and all others similarly situated,* | ) ) ) | Case No. 2:23-cv-1479 |
| | ) | Judge |
| Named Plaintiff, | ) | |
| v. | ) | Magistrate Judge |
| | ) | |
| **CERTUS HEALTHCARE MANAGEMENT, LLC,** | ) ) | **JURY DEMAND ENDORSED HEREON** |
| c/o Statutory Agent | ) | |
| Eric M. Simon | ) | |
| 200 Public Square, Suite 3500 | ) | |
| Cleveland, Ohio 44114, | ) | |
| | ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Margie Wesel ("Wesel" or "Named Plaintiff"), by and through undersigned counsel, *individually and on behalf of all others similarly situated*, for her Collective and Class Action Complaint against Defendant Certus Healthcare Management, LLC ("Certus Healthcare" or "Defendant") for Defendant's willful failure to pay Named Plaintiff and other similarly situated employees overtime wages as well as failure to comply with all other requirements of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("the Ohio Wage Act" or "OWMA"), and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and states and alleges as follows:

## SUMMARY OF COMPLAINT

1.     Wesel brings this collective and class action Complaint to recover unpaid wages and other damages from Certus Healthcare.

2.     Wesel worked for Certus Healthcare as a patient care worker in the position of State Tested Nursing Assistant ("STNA") performing direct patient care duties at one of its senior living facilities located at 1136 Adair Avenue, Zanesville, Ohio 43701.

3.     Like the Putative Class Members (as defined below), Wesel regularly worked more than forty (40) hours in a workweek, but Certus Healthcare does not pay her and the Putative Class Members for all the hours they work for at least three (3) ways described below.

4.     First, Certus Healthcare automatically deducts (or simply does not pay for) thirty (30) minutes per day from these employees' work time for so-called meal breaks (hereinafter "Unpaid Meal Break Policy").

5.     Wesel and the Putative Class Members are thus not paid for that time.

6.     However, Certus Healthcare fails to provide Wesel and the Putative Class Members with *bona fide* meal breaks.

7.     Instead, Certus Healthcare requires Wesel and the Putative Class Members to remain on- duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

8.     Certus Healthcare's Unpaid Meal Break Policy violates the FLSA and the Ohio Acts be depriving Wesel and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

9.     Second, Certus Healthcare paid the Putative Class Members an hourly wage for hours worked (hereinafter "Base Hourly Wage"). In addition to the Based Hourly Wage, Certus

Healthcare pay the Putative Class Members with one or more additional forms of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes, including but not limited to "pick up" bonuses for picking up shifts, weekend warrior bonuses for working on the weekends, and other bonuses or forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Certus Healthcare's business. (collectively hereinafter "Additional Remuneration"). *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[1]

10.     However, Certus Healthcare failed to include the Additional Remuneration in calculating Wesel's and the Putative Class Members' regular rates of pay for overtime purposes during workweeks when Wesel and the Putative Class Members worked overtime in one or more workweeks ("Additional Remuneration Policy").

11.     Certus Healthcare's Additional Remuneration Policy violates the FLSA and Ohio Acts by failing to pay Wesel and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for all overtime hours worked.

12.     Finally, Certus Healthcare has a policy whereby it rounds Wesel's and the Putative Class Members' compensable hours by quarter-hour increments.

---

[1] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed May 1, 2023).

13. However, upon information and belief, Certus Healthcare failed to pay Wesel and the Putative Class Members for all hours worked, including overtime, because the rounding policy is non-neutral and rounds to the Putative Class Members' detriment ("Rounding Policy").

14. As a result, Certus Healthcare's rounding policy violates the FLSA and the Ohio Acts by failing to pay Wesel and the Putative Class Members all overtime wages.

15. Defendant operates at least twenty (20) senior care facilities[2] throughout the State of Ohio.

16. At these facilities, Defendant employs hundreds of hourly, non-exempt direct care employees.

17. At these facilities, Defendant applies the same policies, procedures, and practices with respect to the payment of overtime wages to its hourly, non-exempt direct care employees as alleged in this Complaint.

18. As more fully alleged below, Defendant repeatedly and willfully violated the FLSA and the Ohio Acts by failing to pay its hourly workers, including Named Plaintiff and the Putative Class Members for all compensable hours.

19. Named Plaintiff brings this action on behalf of herself and similarly situated current and former hourly patient care employees who elect to opt in pursuant to the FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendant (the "FLSA Collective" as defined below).

20. Named Plaintiff also brings this action on behalf of herself and similarly situated current and former hourly patient care employees pursuant to Federal Rule of Civil Procedure 23,

---

[2] *See* https://www.certushc.com/communities/ (last accessed May 1, 2023).

to remedy violations of the Ohio Acts claims (the "Ohio Class" or "Ohio Class Members" as defined below).

I. **JURISDICTION AND VENUE**

21.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

22.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Certus Healthcare because Certus Healthcare is an Ohio limited liability company formed under the laws of the State of Ohio.

24.     Venue is proper in this Court because Wesel worked at one of Certus Healthcare's facilities located in Zanesville, Ohio, which is in this District and Division. *See* 28 U.S.C. § 1391(b).

II. **THE PARTIES**

A. **Named Plaintiff Wesel**

25.     Wesel worked for Certus Healthcare as an hourly, STNA at Certus Healthcare's "Cedar Hill Healthcare & Rehabilitation" facility located at 1136 Adair Avenue, Zanesville, Ohio 43701 from approximately September, 2022 until April 28, 2023.

26.     Throughout her employment, Certus Healthcare classified her as non-exempt and paid her on an hourly basis.

27.     As an STNA, Wesel primarily performed non-exempt job duties such as direct patient care of the facility's residents during each shift.

28.     Throughout her employment, Certus Healthcare subjected Wesel to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

29.     However, Wesel never received *bona fide* meal breaks.

30.     Throughout her employment, Certus Healthcare paid Wesel Additional Remuneration as summarized above.

31.     However, Certus Healthcare failed to include Additional Remuneration in calculating Wesel's regular rate of pay for overtime purposes.

32.     Throughout her employment, Certus Healthcare had a policy of rounding Wesel's compensable hours in quarter-hour increments.

33.     However, Certus Healthcare failed to pay her for all hours worked because its Rounding Policy was non-neutral and resulted in unpaid overtime.

34.     Wesel's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

35.     Wesel brings this action on behalf of herself and other similarly situated hourly, non-exempt Certus Healthcare employees who (1) were subject to Certus Healthcare's Unpaid Meal Break Policy; (2) were paid under Certus Healthcare's Additional Remuneration Policy; and/or (3) were paid under Certus Healthcare's Rounding Policy.

36.     The FLSA Collective of similarly situated employees to whom Wesel seeks to represent are defined as:

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Unpaid Meal Break Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective");

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Additional Remuneration Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Additional Remuneration Collective Members" or "FLSA Additional Remuneration Collective"); and
>
> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Rounding Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Rounding Collective" or "FLSA Rounding Collective Members").

37.     The FLSA Collective comprised of the FLSA Meal Break Collective Members, FLSA Additional Remuneration Collective Members, and the FLSA Rounding Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

38.     Wesel also seeks to represent such classes under the Ohio Acts – OMWA and the OPPA – pursuant to Fed. R. Civ. P. 23.

39.     The Ohio Classes of similarly situated employees are defined as:

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Unpaid Meal Break Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Meal Break Class Members" or "Ohio Meal Break Class");
>
> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Additional Remuneration Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Additional Remuneration Class Members" or "Ohio Additional Remuneration Class"); and
>
> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Rounding Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Rounding Class" or "Ohio Rounding Class Members").

40.     The Ohio Meal Break Class Members, the Ohio Additional Remuneration Class Members, and the Ohio Rounding Class Members collectively referred to as the "Ohio Class Members" or "Ohio Classes."

41. The FLSA Collective Members and the Ohio Class Members are collectively referred to as the "Putative Class Members" or the "Putative Classes."

**B. Certus Healthcare**

42. Certus Healthcare is an Ohio limited liability company and may be served with process by serving its registered agent: Eric M. Simon, 200 Public Square, Suite 3500, Cleveland, Ohio 44114.

43. Certus Healthcare operates skilled nursing and rehabilitation facilities referred to as "communities"[3] throughout the State of Ohio, providing services from skilled nursing care and rehabilitation to long term care.

44. At all times relevant, Certus Healthcare was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

45. At all times relevant, Certus Healthcare was an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Certus Healthcare performs related activities through unified operations and common control for a common business purpose; named, the operation of "Certus Healthcare" facilities throughout the State of Ohio.

46. For example, Certus Healthcare owns and operates approximately twenty (20) Certus Healthcare facilities in Ohio.[4]

---

[3] *See* https://www.certushc.com/communities/ (last accessed May 1, 2023). All one must do is scroll down and view all of what Certus Healthcare has labeled "Our Locations," including (1) Adams Lane Healthcare & Rehabilitation; (2) Aristocrat Berea; (3) Beacon House Senior Living; (4) Beckett House Healthcare & Rehabilitation; (5) Bryan Healthcare & Rehabilitation; (6) Candlewood Healthcare & Rehabilitation; (7) Cedar Hill Healthcare & Rehabilitation; (8) Cityview Healthcare & Rehabilitation; (9) Forest Hill Healthcare & Rehabilitation; (10) Forest Hill Senior Living; (11) Heritage Village of Clyde; (12) Heritage Village of Waterville; (13) Kent Healthcare & Rehabilitation; (14) New Lexington Healthcare & Rehabilitation; (15) Niles Way Senior Living; (16) Perrysburg Healthcare & Rehabilitation; (17) Point Place Healthcare & Rehabilitation; (18) Shadyside Healthcare & Rehabilitation; (19) Sterling Suites Senior Living; and (20) Willow Haven Healthcare & Rehabilitation.

[4] *See id.*

47.     Each facility is engaged in related activities, i.e. all activities which are necessary to the operation and maintenance of Certus Healthcare facilities.

48.     Each facility has common management, ownership, and related interests across all Certus Healthcare facilities.

49.     Certus Healthcare retains the ultimate authority over operational control over significant aspects of the day-to-day functions of "Certus Healthcare" facilities, including supervising and controlling schedules, and conditions of employment of Wesel and the Putative Class Members.

50.     Each facility provides the same or similar array of products and services to patients at the Certus Healthcare facilities.

51.     Certus Healthcare employment services and human resources operations such as payroll services, email access, uniforms, and training are advertised and controlled through the same Certus Healthcare website[5] regardless of location of the facility.

52.     Certus Healthcare employment offerings and job applications are also advertised and controlled through the same Certus Healthcare website[6] regardless of location of the facility.

53.     At all times relevant, Certus Healthcare had direct or indirect control and authority of Named Plaintiff's and the Putative Class Members' working conditions, including matters governing the essential terms and conditions of their employment.

54.     At all times relevant, Certus Healthcare exercised authority and control over Named Plaintiff and the Putative Class Members across all Certus Healthcare facilities.

55.     At all times relevant, Certus Healthcare had the authority to (and do) hire and fire employees, supervise and control the work schedules and work conditions of employees,

---

[5] *See* https://www.certushc.com/employees (last accessed May 1, 2023).
[6] *See* https://secure.entertimeonline.com/ta/CertusHC.careers?CareersSearch (last accessed May 1, 2023).

determine the rate and method of pay, and/or maintain employee records across all "Certus Healthcare" facilities and locations.

56.     At all times relevant, Certus Healthcare was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Certus Healthcare has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, such as medical tools, personal protective equipment, computers, and cell phones.

57.     At all relevant times, Certus Healthcare has had an annual gross volume of sales made, or business done, of not less than $500,000 each of last three (3) years preceding the original Complaint.

58.     As alleged above, Certus Healthcare applied its Unpaid Meal Break Policy, Additional Remuneration Policy, and/or Rounding Policy uniformly to its hourly patient care workers across all of its facilities.

III.   **FACTUAL ALLEGATIONS**

59.     At all times relevant, Named Plaintiff Wesel and other members of the Putative Class were hourly, non-exempt employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; Ohio Revised Code § 4111.03.

60.     At all times relevant, Named Plaintiff and other members of the FLSA Collective and Ohio Class were hourly, non-exempt direct care employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; O.R.C. § 4111.03.

61.     Named Plaintiff and other members of the Putative Class worked overtime hours during one or more workweeks during their employments with Defendant.

62.     At all times relevant, (1) Named Plaintiff and similarly situated patient care employees regularly worked overtime without compensation, and (2) Defendant knew that Named Plaintiff and similarly situated patient care employees worked overtime without proper compensation.

**(Unpaid Overtime Due to Defendant's Unpaid Meal Break Policy)**

63.     Defendant required a meal break deduction of at least thirty (30) minutes per day from Named Plaintiff's and similarly situated patient care employees' compensable hours worked. However, Named Plaintiff and similarly situated patient care employees were often unable to take a bona fide meal break, took a shortened meal break, and/or otherwise was unable to take a fully uninterrupted meal break because of their substantive job duties.

64.     Defendant had actual or constructive knowledge that Named Plaintiff's and similarly situated patient care employees' meal breaks were either missed, shortened, and/or otherwise interrupted by job duties.

65.     Named Plaintiff and similarly situated patient care employees were not permitted to report the missed/interrupted meal breaks.

66.     In fact, despite complaining to management about the interrupted/missed meal breaks, Named Plaintiff and similarly situated patient care employees were discouraged from reporting instances of interrupted/missed meal breaks.

67.     In other instances, Defendant instructed Named Plaintiff and other members of the Putative Class to "use it or lose it" regardless of the fact that Named Plaintiff and the Putative Class worked through their meal breaks.

68.     As a result of Defendant's policy and/or practice to require a 30-minute meal break deduction from Named Plaintiff's and similarly situated patient care employees' compensable hours worked for meal breaks that were not taken at all or that were interrupted by work duties, Defendant had actual or constructive knowledge that they were not compensating Named Plaintiff and similarly situated patient care employees for all hours worked.

**(Unpaid Overtime Due to Failure to Pay at Correct Regular Rate of Pay)**

69.     During their employment with Defendant, Named Plaintiff and the Putative Class Members were not fully and properly paid for all of their compensable overtime hours worked because Defendant did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and the Ohio Acts, which resulted in unpaid overtime wages. Defendant did not properly calculate overtime based on Named Plaintiff's and other members of the Putative Class Members' ***regular rate of pay***, as defined by the FLSA and as required by the Ohio Acts, but instead calculated overtime compensation based on Named Plaintiff's and other members of the Putative Class's hourly rates of pay, resulting in unpaid overtime compensation

70.     As outlined above, Defendant paid Named Plaintiff and the Putative Class Members a Base Hourly Wage as well as one or more additional forms of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes, including but not limited to, "pick up" bonuses for picking up shifts, weekend warrior bonuses for working on the weekends, and other bonuses or forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or

efficiently, and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Certus Healthcare's business. *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[7]

71.     Defendant informed Named Plaintiff and other members of the Putative Class of the additional non-discretionary Additional Remuneration, upon hiring or otherwise during their employments. Named Plaintiff and other members of the Putative Class expected to receive the Additional Remuneration and did in fact receive the Additional Remuneration.

72.     During the last three years preceding the filing of this Complaint, Named Plaintiff and other members of the Putative Class received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweeks when they work overtime hours, more than forty (40) hours in a single workweek.

73.     By way of one non-exhaustive example, Named Plaintiff Wesel worked overtime and received Additional Remuneration in the form of a $620 non-discretionary bonus during the pay period of February 12, 2023 through February 25, 2023, but Defendant failed to include it into her regular rate of pay for purposes of calculating her overtime rate.

**(Failure to Pay Overtime Due to Non-Neutral Rounding Policy)**

74.     During workweeks when Named Plaintiff worked more than 40 hours in one or more workweeks, Defendant failed to pay her overtime compensation for all hours worked.

75.     Upon information and belief, Defendant required Named Plaintiff to clock in/out each day to keep track of her work hours.

---

[7] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed May 1, 2023).

76.     Once clocked in[8] at the beginning of her shift, Named Plaintiff regularly performed integral and indispensable unpaid work before her scheduled shift starting time, including, but not limited to proceeding to her floor to perform direct patient care duties. Once clocked in and until she clocked out at the end of her shift, Named Plaintiff continued working at all times relevant. All of this work is captured on Defendant's company-wide timekeeping system.

77.     Upon information and belief, Defendant rounded Named Plaintiff's clock in time to her scheduled shift time. As a result of this time rounding, Named Plaintiff was not paid for all of the time she was suffered or permitted to work for Defendant.

78.     Defendant rounded Named Plaintiff's starting times despite utilizing a timekeeping system that tracks exactly when Named Plaintiff "punched" or clocked in/out each day. Despite knowing of her performance of pre-shift work during workweeks when Named Plaintiff worked more than 40 hours, Defendant did not pay Named Plaintiff for such overtime which was required to be paid at "one and one-half times" Named Plaintiff's "regular rate[s]" of pay. *See* 29 U.S.C. § 207.

79.     Moreover, despite working up through and including until she clocked out each day on a regular basis, which resulted in her working beyond the end of her scheduled shifts, Defendant regularly only compensated Named Plaintiff for hours worked until her shift ending time resulting in unpaid overtime compensation.

80.     At all times relevant, Defendant was aware that Named Plaintiff performed integral and indispensable work beyond her scheduled shifts because it trained and instructed her to

---

[8] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

perform such work, and observed her performing this work, but failed to compensate her for this work nevertheless.

81.     Defendant's policy/practice whereby it only paid Named Plaintiff for her scheduled shifts and/or improperly rounded Named Plaintiff's punch-in and punch-out times to the detriment of Named Plaintiff and to Defendant's benefit in a non-neutral way in practice violates the FLSA and the Ohio Acts because it failed to compensate Named Plaintiff for all time she and other members of the Putative Class actually worked for Defendant's benefit.

82.     This integral and indispensable unpaid work performed by Named Plaintiff was practically ascertainable to Defendant.

83.     There was no practical administrative difficulty of recording/paying this integral and indispensable unpaid work performed by Named Plaintiff and the Putative Class.

84.     The unpaid work performed by Named Plaintiff constituted part of her principal activities, was required by Defendant, and was performed for Defendant's benefit.

85.     Moreover, the unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff and was part of her continuous workday.

86.     As outlined above, Defendant's failure to compensate Named Plaintiff and similarly situated members of the Putative Class for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay as a result of one or more polices described above constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio Acts, O.R.C. §§ 4111.03(A), 4113.15.

87.     Defendant knew that Named Plaintiff and other members of the Putative Class were entitled to overtime compensation under federal and Ohio or acted in reckless disregard for whether they were so entitled.

88. Defendant intentionally, knowingly, and willfully circumvented the requirements of the FLSA and the Ohio Acts.

89. The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. §§ 4111.03, 4113.15; and resulted in the unlawful deprivation of wages of Defendant to the detriment of Defendant's employees, including Named Plaintiff and other members of the Putative Class.

**A.    FLSA Collective Action for Unpaid Overtime Wages**

90. Named Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct as described herein.

91. As outlined above, the FLSA Collective that Named Plaintiff seeks to represent as members of the FLSA Collective and to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff herself is a member, is composed of and defined as follows:

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Unpaid Meal Break Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective");

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Additional Remuneration Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Additional Remuneration Collective Members" or "FLSA Additional Remuneration Collective"); and

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Rounding Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Rounding Collective" or "FLSA Rounding Collective Members").

92.     As alleged above, FLSA Meal Break Collective Members, FLSA Additional Remuneration Collective Members, and the FLSA Rounding Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

93.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former hourly patient care employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as her own, in bringing this action.

94.     Examples of other members of the FLSA Collectives are those who performed direct care for patients, such as Registered Nurses ("RN"), Licensed Practical Nurse ("LPN"), Certified Nursing Assistants ("CNA"), and State Tested Nursing Assistants ("STNA") at its facilities.

95.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

96.     These similarly situated employees are known to Defendant and are readily identifiable through Defendant's business and payroll records that they were required to maintain pursuant to the FLSA. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. §216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

97.     Named Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the FLSA Collectives consists of several hundred or more

persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and were required to maintain, pursuant to the FLSA.

**B.     Federal Rule of Civil Procedure 23 Class Action for Unpaid Overtime Wages**

98.     Named Plaintiff brings her Ohio Acts claims under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the Ohio Class Members, defined as:

> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Unpaid Meal Break Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Meal Break Class Members" or "Ohio Meal Break Class");
>
> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Additional Remuneration Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Additional Remuneration Class Members" or "Ohio Additional Remuneration Class"); and
>
> All hourly, non-exempt Certus Healthcare patient care employees who were subject to the Rounding Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Rounding Class" or "Ohio Rounding Class Members").

99.     As alleged above, the Ohio Meal Break Class Members, the Ohio Additional Remuneration Class Members, and the Ohio Rounding Class Members are collectively referred to as the "Ohio Class Members" or "Ohio Classes." The claims brought on behalf of the Ohio Class Members are brought on behalf of all similarly situated persons who do not opt-out of the Ohio Classes during the relevant time period above.

100.    The Ohio Classes, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records

Defendant maintained, and were required to maintain, pursuant to the FLSA and the Ohio Acts. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

101. Named Plaintiff is a member of the Ohio Classes and her claims for unpaid wages are typical of the claims of other members of the Ohio Classes.

102. Named Plaintiff will fairly and adequately represent the Ohio Classes and the interests of all members of the Ohio Classes.

103. Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Ohio Classes that she has undertaken to represent.

104. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Classes. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Classes in this case.

105. Questions of law and fact are common to the Ohio Classes and predominate over any questions affecting only individual members. The questions of law and fact common to the Ohio Classes arising from Defendant's conduct include, without limitation:

    (a)    whether Defendant violated the Ohio Acts by failing to pay the Ohio Class Members for all overtime wages earned because of the violation(s) described herein;

    (b)    what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff and other members of the Ohio Classes on account of Defendant's violations of the Ohio Acts;

    (c)    whether the unpaid and/or withheld compensation remained unpaid in violation of the Ohio Acts; and

    (d)    what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by the Ohio Acts is due to Named Plaintiff and

other members of the Ohio Classes on the overtime or other entitled compensation which was withheld or not paid to them.

106.     Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to their hourly, non-exempt employees comprising of the Ohio Class.

107.     Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Classes, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the Ohio Classes as a whole.

108.     Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Classes predominate over questions affecting individual members of the Ohio Classes and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

109.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

110.     Named Plaintiff and counsel are not aware of any interfering pending Ohio litigation on behalf of the Ohio Classes as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV.    CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

111.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

112.    This claim is brought as part of a collective action by Named Plaintiff on behalf of herself and other members of the FLSA Collectives against Defendant, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

113.    The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

114.    Named Plaintiff and other members of the FLSA Collectives should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

115.    Defendant did not pay overtime compensation to Named Plaintiff and other members of the FLSA Collectives at overtime wages for all of their overtime hours worked due to Defendant's (1) Unpaid Meal Break Policy; (2) Additional Remuneration Policy; and/or (3) Rounding Policy as alleged above.

116.    Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

117.    As a result of Defendant's practices and/or policies, Named Plaintiff and other members of the FLSA Collectives have not received overtime wages due to them pursuant to the FLSA.

118. Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and other members of the FLSA Collectives overtime compensation. Defendant's deliberate failure to pay overtime compensation to Named Plaintiff and other members of the FLSA Collectives was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

119. The exact total amount of compensation, including overtime compensation, that Defendant failed to pay Named Plaintiff and other members of the FLSA Collectives is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendant and/or were not kept by Defendant.

120. As a result of Defendant's violations of the FLSA, Named Plaintiff and other members of the FLSA Collectives were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and other members of the FLSA Collectives to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT II
### (O.R.C. § 4111.03 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME COMPENSATION)

121. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

122. This claim is brought under the Ohio Wage Act, which incorporates the FLSA without limitation.

123.    Named Plaintiff and other Ohio Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under the Ohio Wage Act.

124.    The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1) (stating same).

125.    While employed by Defendant, Named Plaintiff and other Ohio Class Members worked in excess of the maximum weekly hours permitted under Section 4111.03, but were not fully paid overtime wages as outlined above.

126.    As a result of Defendant's company-wide corporate policies and/or practices as described herein, Defendant failed to pay Named Plaintiff and other Ohio Class Members all overtime wages earned.

127.    Named Plaintiff and other Ohio Class Members were not exempt from the wage protections of the Ohio Wage Act.

128.    Defendant's repeated, knowing failure to pay overtime wages to Named Plaintiff and other Ohio Class Members were violations of the Ohio Wage Act, and, as such, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and other Ohio Class Members are entitled.

129.    For Defendant's violations of the Ohio Wage Act, Named Plaintiff and other Ohio Class Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, interest, attorneys' fees, and all other remedies available on behalf of herself and all other Ohio Class Members.

## COUNT III
### (O.R.C. § 4113.15 – RULE 23 CLASS ACTION
### FOR OPPA VIOLATION)

130.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

131.    The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA or the Ohio Wage Act) triggers a failure to timely pay wages under the OPPA.

132.    Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

133.    Named Plaintiff and other Ohio Class Members have been employed by Defendant.

134.    At all times relevant, Defendant was an entity covered by the OPPA, and Named Plaintiff and other Ohio Class Members have been employed by Defendant within the meaning of the OPPA.

135.    The OPPA requires Defendant to pay Named Plaintiff and other Ohio Class Members all wages, including unpaid overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

136.    At all times relevant, Named Plaintiff and other Ohio Class Members were not paid all wages, including overtime wages at one-and-one-half times their regular rates of pay within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

137.    As a result, Named Plaintiff's and other Ohio Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

138.    Defendant's violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other Ohio Class Members of the FLSA Collectives in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

139.    In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

140.    As a result of Defendant's violation of the OPPA, Plaintiff and other members of the FLSA Collective and Ohio Class Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A.    Certifying the proposed FLSA collective action;

B.    Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collectives apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.    Certifying the proposed Ohio Class under the Ohio Acts;

D.    Finding that Defendant have failed to keep accurate records and that Named Plaintiff and other members of the FLSA Collectives and Ohio Class Members are entitled to prove their hours worked with reasonable estimates;

E.    Finding that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA;

F.    Entering judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collectives during the applicable statutory period under the FLSA and continuing through trial;

G.    Entering judgment against Defendant for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collectives during the applicable statutory period under the FLSA and continuing through trial;

H.    Awarding to Named Plaintiff and other members of the FLSA Collectives and Ohio Class Members unpaid compensation, including overtime wages as to be

determined at trial together with any liquidated damages allowed by the Ohio Acts, including but not limited to the OPPA, including but not limited to in an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per Ohio Class member, whichever is greater;

I.      Awarding Named Plaintiff and other members of the FLSA Collectives and Ohio Class prejudgment interest, post-judgment interest, and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J.      Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

K.      Awarding to Named Plaintiff and other members of the FLSA Collectives and Ohio Class costs and disbursements and reasonable allowances for fees of counsel and experts and reimbursement of expenses;

L.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

M.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

N.      Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

O.      Awarding such other and further relief as to this Court may deem necessary, just, or proper.

Respectfully submitted,

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and Other Members*
*of the FLSA Collective and Ohio Class*

## <u>JURY DEMAND</u>

Named Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Daniel I. Bryant*
Daniel I. Bryant