IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARGIE WESEL, *on behalf of herself and all others similarly situated*,

        **Plaintiffs,**

    v.

**CERTUS HEALTHCARE MANAGEMENT, LLC,**

        **Defendant.**

Civil Action No. 2:23-cv-1479

Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson

## OPINION & ORDER

The parties' respective Motions to Compel (Docs. 138, 139) are before the Court. For the following reasons, Plaintiffs' Motion is **GRANTED**, and Defendant's Motion is **DENIED** as premature. The Court also **VACATES** the hearing scheduled on July 17, 2025, and **SETS** deadlines for the parties' future discovery efforts.

**I. BACKGROUND**

This action concerns Plaintiffs' allegations that they and other similarly situated employees worked overtime and were not properly compensated by their employer, Defendant Certus Healthcare Management, LLC. (Doc. 1). Specifically, Plaintiffs allege that Defendant improperly rounded their compensable hours, did not pay them for time worked during meal breaks, and did not include additional renumeration into their regular rate of pay for overtime purposes. (*See, e.g.*, *id.* at ¶¶ 3–13; *see also* Doc. 27 at 4). As a result, Plaintiffs bring claims under the Fair Labor Standards Act of 1938 ("FLSA)", 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111.03, 4113.15. (Doc. 1 at 1).

The instant Motions are the result of a year-long discovery dispute over the format of Defendant's payroll records. On May 21, 2024, Defendant began producing the records in individual PDF documents. (Doc. 98 at 3). To create the PDFs, Defendant exported time and pay information from its payroll system into a web page or image. Then, it printed those images and

pages into individual PDF documents. (Doc. 115-4 at 2 (email from Defendant's counsel explaining this process)). This process resulted in some of the records being cut-off and seemingly not text searchable. (*See* Doc. 115-1 at 2; Doc. 141-8 at 2; Doc. 115-6 at 2 (noting examples of incomplete records and records lacking certain wage information and referencing prior emails on the issue)). In total, Defendant has produced nearly 29,000 individual pages of PDF records in this way. (Doc. 139 at 8).

From the start, Plaintiffs challenged this format. On May 30, 2024, nine days after production began, Plaintiffs contacted Defendant and requested the payroll records be produced in Excel. (Doc. 115-2 at 17–18). Plaintiffs repeated that request several times over the next ten months. (*See, e.g.*, Docs. 115-2 at 7–9, 14, 17–18). Still, Defendant continued producing the records in individual PDF documents. (Doc. 141 at 8; *see also* Doc. 107 at 3 (noting that Defendant restarted producing the records in this format)).

Throughout this time, Defendant claimed that, despite consultations with its IT personnel and payroll provider, no other format was possible. (*See, e.g.*, Doc. 115-3 at 2 (saying counsel would "check what options there are" on October 14, 2024); Doc. 115-4 at 2 (claiming an IT consultant informed counsel that only "a web page or an image" printed to PDF was possible); Doc. 140-1 at 4 (saying the payroll provider confirmed no other format was available); Doc. 140-5 (same); *see also* Doc. 140-1 at 3 (suggesting Excel was not available, or counsel would produce it)). Plaintiffs, however, had doubts. As a result, they repeatedly requested meet-and-confers with Defendant's counsel and IT consultant, as well as information about Defendant's payroll providers. (*See, e.g.*, Doc. 115-2 at 7–8 (requesting Excel records on October 1, 2024, and saying they had not heard back from Defendant); Doc. 115-8 at 2 (offering dates to meet with Defendant's counsel and the IT consultant)).

Defendant's responses were less than helpful. For example, Defendant's counsel often ignored Plaintiffs' formatting inquiries. (*See, e.g.*, Doc. 115-2 at 7–8, 12–14, 16–17). Defendant offered to meet with Plaintiffs and its IT consultant, but never scheduled a meeting and then

2

withdrew that offer. (*See, e.g.*, Doc. 115-5 at 2 (asserting counsel could provide an affidavit attesting that no other format was possible, offering to involve the IT consultant, and saying "[i]f excel files could be produced, we'd provide them"); Doc. 115-7 (offering to set up a meeting with the IT consultant); Doc. 115-9 at 2 (withdrawing the offer to meet with the IT consultant)). And Defendant refused to identify its payroll provider with specificity, so Plaintiffs had trouble investigating the issue further. (Doc. 140-6 at 13–14 (saying, as of May 27, 2025, Defendant's counsel had not identified exactly which payroll entity it used); *cf.* Doc. 115 at 8 (noting that Defendant revealed some information about its payroll providers in March 2025)).

Eventually, in March 2025, the Court intervened at Plaintiffs' request. (Doc. 112). What followed were several months of Court-ordered conferral efforts. (*See* Docs. 113, 114, 115, 116, 118, 120, 122, 124, 127, 128, 132, 137 (status reports)). None were successful. In fact, new disputes emerged over the parties' supplemental discovery responses. (*See* Docs. 127, 128). And Defendant continued to insist that Excel-formatted records were not possible. (*See id.*). On May 6, Plaintiffs served subpoenas for the records on Defendant's payroll providers. (Doc. 128 at 3).

To move the case forward, the Court issued a new discovery schedule on May 21, 2025. (Doc. 129). To facilitate Plaintiffs' efforts with the payroll provider, the Court ordered Defendant to provide Plaintiffs with its payroll providers' contact information by May 23. (*Id.* at 3). It also required the parties to confer by May 28 and to supplement their discovery responses by June 11. (*Id.*).

This, too, didn't resolve matters. Both sides still asserted deficiencies with the other's supplemental discovery responses. (*See, e.g.* Docs. 132, 137). But notably, some progress was made on the payroll records. After working directly with Defendant's payroll provider ("Minutemen"), Plaintiffs obtained Excel-formatted records on June 24 and 27. (Doc. 137 at 1–2). Notably, Minutemen's counsel told Plaintiffs that Defendant's counsel never contacted him. (Doc. 140-6 at 8 (email from the payroll provider's counsel affirming that he had "not been in contact with counsel for [Defendant]")). And it appears that Excel-formatted records were

3

available all long, despite Defendant's previous representations. (*Compare* Doc. 140-4 at 2 (saying example reports showed the payroll provider could produce some information in Excel); Doc. 140-6 at 2 (noting the reports could be produced in Excel after discussion with the payroll provider's counsel) *with* Doc. 115-4 at 2 (saying the IT consultant represented no other format was possible); Doc. 137 at 3 (saying the payroll consultant told Defendant's counsel Excel was not available); *see also* Doc. 115 at 7 (representing that Defendant's counsel never asked its payroll provider whether the records could be produced in Excel)).

To resolve the parties' remaining disputes, the Court ordered them to file any respective discovery motions by July 3, with responses due seven days later. (Docs. 133, 136). The Court also set a discovery hearing for July 17. (Doc. 133 at 3).

Both parties filed timely Motions to Compel. (Docs. 138, 139). But only Plaintiffs filed a response. (Doc. 141). The Motions are ripe for review.

## II.     STANDARD

Two rules govern the parties' Motions to compel. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to provide proper responses to requests for production of documents. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant meets that burden, "the party resisting production has the burden of establishing that the information either is not relevant" or that the information's relevance "is outweighed by the potential for undue burden[.]" *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 462 (S.D. Ohio Oct. 21, 2015). But at base, "the scope of discovery is within the

4

sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-cv-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (citation modified).

### III. DISCUSSION

Both sides accuse the other of failing to provide timely or sufficient discovery responses. (Docs. 138, 139). Because their Motion is unopposed, the Court begins with Plaintiffs' Motion before addressing Defendant's.

#### A. Plaintiffs' Motion to Compel (Doc. 139)

Plaintiffs filed their Motion to Compel on July 3, 2025. (Doc. 139). The Court ordered that responses were due on or before July 10, 2025. (Doc. 133 at 3; Doc. 136 (extending the deadline for a status report but cautioning that "the Court will not extend the deadlines for discovery motions or responses")). Defendant did not respond to Plaintiffs' Motion.

Local Rule 7.2(a)(2) provides that "[f]ailure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees[.]" S.D. Ohio Civ. R. 7.2(a)(2). Courts within this District routinely treat motions to compel to which no responses were filed as unopposed. *See, e.g.*, *Fanty v. Greater Dayton Premier Mgmt.*, No. 3:23-cv-298, 2025 WL 1207667, at *3 (S.D. Ohio Apr. 25, 2025); *Ross v. Am. Red Cross*, No. 2:09-cv-905, 2012 WL 12925813, at *1 (S.D. Ohio Feb. 2, 2012); *United States v. $34,929.00 in U.S. Currency*, No. 2:09-cv-734, 2012 WL 4006681, at *1–2 (S.D. Ohio Sept. 12, 2012); *Joseph v. Hampton*, No. 2:15-cv-85, 2015 WL 9460572, at *1 (S.D. Ohio Dec. 28, 2015); *see also Kendle v. Whig Enters., LLC*, No. 2:15-cv-1295, 2016 WL 898569, at *4 (S.D. Ohio Mar. 9, 2016) ("Ordinarily, an unopposed motion to compel would be granted.").

So too here. Because Defendant wholly failed to respond to Plaintiffs' Motion by the Court-ordered deadline, the Court treats Plaintiffs' Motion as unopposed. Consequently, the Court finds the Motion should be granted in its entirety on this basis. Still more, the Motion succeeds on the merits.

To begin, Plaintiffs' Motion is procedurally proper. Plaintiffs propounded the discovery requests at-issue on February 11, 2025, after the Court modified certain case deadlines and warned the parties that no further extensions would be granted. (Doc. 109 (extending deadlines for mediation and motions for class certification)). When Defendant did not provide timely responses or objections, Plaintiffs sought intervention from the Court. (Doc. 139 at 7; Doc. 112). For months after that, the parties engaged in Court-ordered conferral efforts on various discovery disputes. (*See* Docs. 113, 114, 115, 116, 118, 120, 122, 124, 127, 128, 132 (status reports)). Eventually, on April 17, Defendant provided some responses and objections, and on June 11, it supplemented those responses. (Doc. 139 at 7–8). On June 16, the Court granted Plaintiffs leave to file the instant Motion on July 3. (Doc. 133). On this record, the Court finds that Plaintiffs met their conferral obligations under the Federal and Local Rules before they filed the instant Motion. Fed. R. Civ. P. 37(a); S.D. Ohio Civ. R. 37.1.

Further, the Court concludes that Plaintiffs' discovery requests seek relevant information and "are not patently improper." *Fanty*, 2025 WL 1207667, at *3; (Doc. 139 at 6–7). As noted, Defendant has produced 8,900 documents containing nearly 29,000 individual pages. (Doc. 139 at 8). The production, Plaintiffs say, contains "payroll records, snapshots of monthly hours worked, an employee handbook[,] signed lunch breach policy forms, signed employee acknowledgement forms, payroll registers summariz[ing] total pay, and cancelled meal break deductions." (*Id.*). Even so, Plaintiffs argue Defendant is improperly withholding compensation policies, timekeeping system manuals, documents for missed or shortened breaks, employee agreements, documents given to Plaintiffs and others on their wages, complaints or grievances about wages, organizational charts and documents, contractual agreements with timekeeping vendors, and various electronically stored information (ESI) related to compensation. (*Id.* at 8–10). This information is clearly relevant to Plaintiffs' claims and/or to Defendant's purported defenses. (*See id.* at 14–20 (discussing the relevance of the requests, as well as a defense related to Defendant's employer status)). And given Defendant's failure to respond to the Motion, nothing

in the record rebuts this showing of relevance or suggests that the discovery sought is too burdensome or harmful to produce. *O'Malley*, 311 F.R.D. at 462.

Accordingly, Plaintiffs' unopposed Motion to Compel (Doc. 139) is **GRANTED**. Defendant is **ORDERED** to fully respond to Plaintiffs' discovery requests **within thirty (30) days of the date of this Order**. (Doc. 139 at 6–7). Defendant is also **WARNED** that failure to comply with this Order may result in the imposition of sanctions. *See* Fed. R. Civ. P. 37(b)(2).

### B. Defendant's Motion to Compel (Doc. 138)

For its part, Defendant's Motion focuses on two categories of discovery requests. (Doc. 138 at 2–3). First, Defendant seeks information on Plaintiffs' alleged calculation of damages. (*Id.* at 2). Second, Defendant wants discovery responses related to damages and compensation from each of the 620 Opt-In Plaintiffs. (*Id.* at 3).

Although Defendant is upset that Plaintiffs did not provide this information sooner, there is no live dispute before the Court. Plaintiffs do not object to Defendant's requests outright. Instead, they need more time before they can properly respond. Plaintiffs received payroll records from Defendant's payroll provider on June 24 and June 27. (Doc. 140 at 10). Currently, Plaintiffs await their vendor's analysis of those records. (Doc. 141 at 8, 14). Once Plaintiffs have that analysis, they will promptly supplement their discovery responses for their damages calculations, as Defendant requests. (*Id.* at 8). In the meantime, Plaintiffs have provided Defendant with a detailed explanation and example of how they anticipate calculating damages. (Doc. 128-3 at 4–6).

As for Defendant's individualized discovery requests, Plaintiffs also say more information is needed. Notably, Defendant did not clarify that it sought individualized discovery responses until May 28, 2025—nearly six months after it propounded its discovery requests. (*See* Doc. 141 at 10–11). And Plaintiffs say they cannot meaningfully confer on this request until their vendor completes its analysis of the payroll records. (*Id.* at 12). To explain, Plaintiffs assert that Defendant incorrectly calculated the number of employees in the collective. (Doc. 132 at 3–4).

7

Plaintiffs cannot determine the collective's actual size until they receive their vendor's analysis of the payroll records, though they believe at least 50 individuals improperly joined this action. (Doc. 141 at 8, 12–13). So, instead of providing responses for individuals improperly included in the collective, Plaintiffs propose waiting until its vendor has finished analyzing the payroll records. (*Id.* at 12–13). After that, the parties can ascertain who belongs in the collective and confer on whether individualized discovery or a sampling approach is more appropriate. (*Id.* at 13).

In sum, Defendant's Motion comes too soon. Plaintiffs are actively working with its vendor to calculate their alleged damages. And until that analysis is complete, the parties cannot meaningfully confer on Defendant's request for individualized discovery from all the Opt-In Plaintiffs. (Doc. 141 at 12–13). Nor can the Court determine whether such discovery is reasonable and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1), (C)(i)–(iii). Should the parties reach an impasse on this issue in the future, Defendant may seek intervention from the Court at that time. *See* S.D. Ohio Civ. R. 37.1 (requiring the parties to exhaust all extrajudicial means for resolving disputes before asking the Court for an informal conference or filing discovery motions). But for now, the parties have more work to do. As a result, Defendant's Motion (Doc. 138) is **DENIED** as premature.

Finally, Plaintiffs seek an award of attorney's fees based upon Defendant's Motion. (Doc. 141 at 10). On July 3, Plaintiffs also filed a motion for sanctions concerning Defendant's conduct during this discovery dispute. (Doc. 140). Therefore, the Court **DEFERS** the issue of fees until the Court considers Plaintiffs' motion for sanctions.

**C.    Schedule**

Finally, the Court turns to the case schedule. The Court previously ordered the parties to mediate this case in September 2025, and that deadline will not be moved. (Doc. 129 at 3). As such, the Court sets the following schedule to ensure the parties stay on track.

Defendant is **ORDERED** to supplement its discovery responses **within thirty (30) days** of the date of this Order. Further, to facilitate the parties' mediation efforts, the Court expects

8

Plaintiffs to provide Defendant with an alleged damages calculation **no later than August 1, 2025**. (Doc. 115-2 at 8 (representing that it would take two to three weeks to analyze the payroll records once produced); Doc. 140 at 10 (saying the final records were produced on June 27)).

Once Plaintiffs receive their vendor's analysis of the payroll records, the Court also **ORDERS** the parties to confer on Plaintiffs' supplemental discovery responses in good faith. These discussions should address Defendant's request for individualized discovery and Plaintiffs' alternative sampling approach. The Court **ORDERS** the parties to file status reports on these efforts and their discovery progress **on July 31, August 15, and September 2**.

One final note. These discovery disputes have caused the case schedule to be extended multiple times, and this case is already over two years old. From now on, the Court expects the parties to work together in good faith to meet case deadlines and extrajudicially resolve their differences. The Court also expects counsel to afford each other the civility and professional courtesy required by this District's Local Rules. *See* S.D. Ohio Civ. R. Introductory Statement. At bottom, the obligation "to serve his or her client's interests zealously within the bounds of the law" does not provide "a blanket excuse for disrespectful or obstructionist behavior." *Id.* at 5, ¶ 2. Counsel in this case would do well to remember this admonition.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel (Doc. 139) is **GRANTED**, and Defendant's Motion to Compel (Doc. 138) is **DENIED** as premature.

Defendant is **ORDERED** to supplement its discovery responses **within thirty (30) days of the date of this Order**. Additionally, the Court expects Plaintiffs to provide Defendant with an alleged damages calculation **no later than August 1, 2025**. (Doc. 115-2 at 8 (representing that it would take two to three weeks to analyze payroll records once produced); Doc. 140 at 10 (saying the final records were produced on June 27)).

Once Plaintiffs receive their vendor's analysis of the payroll records, the Court **ORDERS** the parties to confer on Plaintiffs' supplemental discovery responses in good faith. These

9

discussions should address Defendant's request for individualized discovery and Plaintiffs' alternative sampling approach. The Court **ORDERS** the parties to file status reports on these efforts and their discovery progress **on July 31, August 15, and September 2**.

The Court **DEFERS** any consideration of fees related to these Motions until the Court addresses Plaintiffs' separate motion for sanctions. (Doc. 140).

Finally, the Court **VACATES** the hearing scheduled on July 17, 2025. (Doc. 133). The parties' mediation deadline of September 2025 remains in place. (Doc. 129 at 3).

IT IS SO ORDERED.

Date: July 14, 2025 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE